UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

CASE NO. 3:20-CR-86-TJC-JBT

v.

CHRISTIAN FLETCHER.

_____/

**MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29 AND MEMORANDUM OF LAW**

Christian Fletcher, through undersigned counsel, moves this Court, pursuant to Fed. R. Crim. P. 29(c), to enter a judgment of acquittal on Counts One, Eight, Fifteen, and Eighteen of the superseding indictment on the grounds that the evidence the government presented was insufficient to sustain a conviction on those counts.

**I.    STATEMENT OF FACTS**

1.    Campbellton-Graceville Hospital ("CGH") was a critical access hospital in rural Florida that struggled financially. On October 1, 2015, CGH entered into an agreement with LifeBrite Laboratories, LLC ("LifeBrite"), wherein LifeBrite agreed to provide reference laboratory services to CGH. *Govt. Exh.* 26C.

2.    Regional General Hospital – Williston ("RGH") was a rural acute care hospital in rural Florida that struggled financially. On June 27, 2016, RGH entered

into an agreement with LifeBrite, wherein LifeBrite agreed to provide reference laboratory services to RGH. *Govt. Exh.* 26G.

3.      Putnam County Memorial Hospital ("PCH") was a critical access hospital in rural Missouri that struggled financially. On September 16, 2016, PCH entered into an agreement with LifeBrite, wherein LifeBrite agreed to provide outreach laboratory services to PCH. *Govt. Exh.* 26M.

4.      There are no federal laws prohibiting reference or outreach laboratory services being performed for critical access and rural acute hospitals.

5.      Various insurance company representatives testified that their employers contracted with CGH, RGH and PCH. Ultimately, the commercial insurers paid more than they had assumed they would when the commercial insurers entered into the contracts with the hospitals. No commercial insurers contracted with LifeBrite, and no commercial insures testified that LifeBrite made any misrepresentations to them or that LifeBrite caused any misrepresentations to be made to them.

6.      Witnesses testified that, pursuant to the terms of the LifeBrite contracts, CGH and RGH kept 20% of the commercial insurance reimbursements that were billed for non-patients. Further, CGH and RGH employees established that the hospitals performed screen tests on urine and LifeBrite performed confirmatory tests on the same urine. While the testimony indicated that urine was

sent to LifeBrite first, instead of CGH or RGH, no one established why that was illegal as opposed to merely a variance to the contract terms – a purely civil issue.

7.    As to PCH, witnesses testified that, pursuant to the terms of the contracts, LifeBrite kept 80% of the commercial insurance reimbursement that was billed for non-patients. LifeBrite acted, pursuant to the contract, as an outsource lab and performed both screen and confirmatory tests.

8.    Various professionals testified for the government. One, Robert Waller, testified that he did not know anything about LifeBrite. Dr. Solomon used LifeBrite and had testified that the frequency and type of testing LifeBrite did for his patients was medically necessary. Missy Parks, a certified fraud examiner, took data and turned it into colorful charts, but produced no substantive evidence against LifeBrite. Peter Kongstvedt opined that LifeBrite should have billed differently, not based on legal requirements but based on his view of industry norms and a provider manual applicable only in Colorado. Kongstvedt testified that experts could have differing opinions on the same matter. An accountant, Kimberly Henderson, explained that money flowed from and into bank accounts, but added no substantive evidence against Fletcher.

9.    Many of the lay witnesses testified that LifeBrite performed tests it was contractually obligated to perform. None testified that Fletcher made a misrepresentation or caused a misrepresentation to be made.

3

10.     Some government witnesses confused Christian Fletcher with Christian Calhoun. No government witness identified Fletcher was the Christian Fletcher named in the indictment or the Christian Fletcher who owned and operated LifeBrite.

11.     At the conclusion of the trial, the jury convicted Defendants Jorge and Ricardo Perez of a conspiring to commit health care and wire fraud, committing health care fraud, and conspiring to commit money laundering. At the close of the government's case, there was insufficient evidence as a matter of law that Fletcher joined any conspiracy, and the jury was also failed to find that Fletcher joined any conspiracy.

## II.     Memorandum of Law

Distilled to its core, the government's case relies on the Court and the jury finding Fletcher knowingly and willingly agreed to submit false claims to commercial insurance companies. *United States v. Grow*, 977 F.3d 1310, 1322 (11th Cir. 2020) ("[I]n a health[care] fraud case, the defendant must be shown to have known that the claims submitted were, in fact, false." *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007)). The evidence at trial was clear – LifeBrite performed tests it contracted to perform, provided the results as required pursuant to the terms of the contract, and was paid at the rate provided for in the contracts. There was no proof that LieBrite failed to perform a test, reported false results, or

4

otherwise caused any fraudulent representation to be made to any commercial insurance company. While the Perez brothers were convicted of participating in two conspiracies, the government failed to adduce substantial evidence that Fletcher joined the conspiracies.

   A. *Fed. R. Crim. P. 29 Standard*

A defendant may move for judgment of acquittal after (1) the government's case-in-chief, (2) the defendant's case-in-chief, and/or (3) within fourteen (14) days of the jury's verdict or discharge. Fed. R. Crim. P. 29 (stating that the court may set aside the jury's guilty verdict and enter an acquittal). If the court enters a judgment of acquittal after the jury's guilty verdict, the court must further make a conditional determination as to "whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d) (requiring that the court specify the reasons for such conditional determination). Here, the jury did not reach a verdict, so no conditional determination is necessary.

When a defendant moves for a judgment of acquittal pursuant to Rule 29, the court views the evidence "in the light most favorable to the government" and decides "whether a rational trier of fact could have found the defendant guilty **beyond a reasonable doubt**." *United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001) (internal quotations omitted) (emphasis added); *see also In re Winship*, 397

U.S. 358, 364 (1970) (discussing that the due process clause protects all criminal defendants "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

The court must determine whether "any rational trier of fact [would] have found all the essential elements of the crime beyond a reasonable doubt." *United States v. Lopez*, 403 Fed. App'x 362, 370-71 (11th Cir. 2010). When reviewing the sufficiency of the evidence, "[t]he evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995) (quoting *United States v. Hernandez*, 896 F.2d 513, 517 (11th Cir. 1990)). "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989); *see also United States v. Kelton*, 446 F.2d 669, 671 (8th Cir. 1971) (where the government's evidence is equally strong to infer innocence of the crime charged as it is to infer guilt, the verdict must be one of not guilty and the court has a duty to direct an acquittal.)" Given the jury was unable to reach unanimous verdicts on 80% of the questions it was tasked to answer, it is clear there was a lack of substantial evidence from which it could find guilt beyond a reasonable doubt.

6

B. *Counts One and Eight – Conspiracies*

For Counts One and Eight, the government must prove "(1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United States v. Brenson*, 104 F.3d 1267, 1281-82 (11th Cir. 1997) (quoting *United States v. Harmas*, 974 F.2d 1262, 1267 (11th Cir.1992)). Also, as to Count One, the government must prove willfulness.

While the nature of a conspiracy often relies on circumstantial evidence to prove an agreement, the government must prove more than mere association with another. *See United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1994) (citing *United States v. Kelly*, 749 F.2d 1541 (11th Cir. 1985)). When the government only relies on circumstantial evidence, "reasonable inferences, not mere speculation, must support the conviction." *United States v. Clay*, 832 F.3d 1259, 1293 (11th Cir. 2016) (quoting *United States v. Hernandez*, 743 F.3d 812, 814 (11th Cir. 2014)).

For example, in *United States v. Willner*, 795 F.3d 1297 (11th Cir. 2015), the Eleventh Circuit, after resolving all reasonable inferences and credibility determinations to support the jury's guilty verdict, vacated a doctor's health care fraud related convictions where the government relied entirely upon circumstantial evidence to infer guilt. *Id.* at 1309-10. "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder

7

could find guilt beyond a reasonable doubt, the conviction must be reversed." *Id.* at 1307 (quoting *United States v. Kelly*, 888 F.2d 732. 740 (11th Cir. 1989)). There is no evidence that Fletcher willfully joined the Count One healthcare or wire fraud conspiracy or knowingly joined the Count Eight § 1957 transactional money laundering conspiracy. The government relied on assumptions, industry standards (for which experts disagreed), and contract interpretations by people not qualified to opine on what the contracts meant. The government even failed to show that Fletcher was aware of the contracts between the hospitals and commercial insurance companies.

Using circumstantial evidence to convict unwitting others is a problem well known in the Eleventh Circuit. "Because the Government is permitted broad prosecutorial discretion to the prove the conspiracy, the likelihood exists that those who associate with conspirators will be found guilty of a crime that they have not intended to commit, and part of a group that they never joined." *United States v. Chandler*, 388 F.3d 796, 798 (11th Cir. 2004). Courts are charged to take great care to ensure the government does not permit a jury to sweep innocent people into the conspiratorial net. *Id.* at 806.

That is exactly what the government, at best, did here. The evidence at trial proved Fletcher merely associated, through contractual arrangements, with the Perez brothers, but committed no crimes. *See United States v. Toler*, 144 F.3d 1423,

8

1426 (11th Cir. 1998) (requiring the government to prove an "interdependence" among conspirators to prove a conspiracy existed). "[T]he possible prejudice to defendants is the liberality of proof provided to the government by allowing evidence of other crimes and criminal activities undertaken by co-defendants." *United States v. Glinton*, 154 F.3d 1245, 1250 (11th Cir. 1998).

Despite presenting 42 witnesses and hundreds of exhibits, the government relied on "common sense" that Fletcher must have engaged in a crime with the Perez brothers. Using highly paid experts, the government attempted to show the jury and this Court that Fletcher's business arrangement was unreasonable according to industry standards and therefore his conduct must be criminal. But nothing could be more an anathema to our system of justice. *See Ruan v. United States*, No. 20-1410, 2022 WL 2295024, at *8 (U.S. June 27, 2022). Turning "criminal liability on the mental state of hypothetical 'reasonable' [person], not on the mental state of the defendant himself or herself" is improper. *Id.* "But, we said, '[h]aving liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks—reduces culpability on the all-important element of the crime to negligence…we 'have long been reluctant to infer that a negligence standard was intended in criminal statutes.'" *Id.* (internal quotations and citations omitted).

9

There was no connection between Fletcher and others in Counts One and Eight. For example, there was no evidence linking Fletcher to Guterman, Durall, Zaffuto, Alonzo, or Rojas in Count One. There was no evidence linking Fletcher to Guterman in Count Eight. None was presented because Fletcher did not join the Perez brothers' conspiracies – he unfortunately just did business with them and the hospitals they represented.

Further, the government failed to identify any law that prohibited the reference and outsource laboratory agreements Fletcher contracted with the hospitals. While the government contends that the charges prohibit the conduct, they do not plainly put anyone on notice that the reference and outsource laboratory agreements are impermissible, especially considering the U.S. Health and Human Services rules and regulations expressly permit reference and outsource lab arrangements. Accordingly, the Rule of Lenity demands a judgment of acquittal to be entered. "The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused." *United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010). The government's position that the HHS rules and regulations only govern billing government insurance programs is no help – it simply reinforces that Fletcher could not have been put on notice that the law, in the government's view, forbid his conduct.

10

C. *No Evidence of Willfulness*

As noted, Count One required the government to prove willfulness, which the government failed to do. In *United States v. Vernon*, 723 F.3d 1234 (11th Cir. 2013), the Eleventh Circuit, relying on *United States v. Starks*, 157 F.3d 833 (11th Cir. 1998), held that the government is required to prove that the defendant acted "willfully," that is the defendant acted with the intent to do something that the law forbids. No evidence was presented that Fletcher acted with the intent to defraud the commercial insurance companies, the only alleged victims according to the government. The government may have proved that the Perez brothers willfully violated the law. But no evidence was presented that Fletcher acted with the same bad intent.

D. *Counts Fifteen and Eighteen -- Insufficient Evidence for 1957*

Counts Fifteen and Eighteen charged Fletcher with money laundering, pursuant to 18 U.S.C. § 1957. One of the essential elements of this offense is that the money be the proceeds of criminal activity. *See Gross*, 661 Fed. App'x at 1021; *see United States v. Huff*, 641 F.3d 1228, 1230 (10th Cir. 2011). The only criminal activity which the jury considered was conspiracy to commit health care fraud or wire fraud, and health care fraud. The government did not prove that the money allegedly laundered was the product of conspiracy to commit health care fraud and wire fraud, or substantive health care fraud. For the same reasons the

11

government failed to prove Counts One and Eight, a judgment of acquittal on the money laundering accounts must also be granted. *United States v. Lander*, 668 F.3d 1289, 1297 (11th Cir. 2012) (reversing money laundering conviction when conviction of the predicate offense was reversed); *Medina*, 485 F.3d 1291 (reversing money laundering conviction when proof of the underlying specified unlawful act failed).

As previously noted, the evidence merely showed that LifeBrite engaged in arms-length business transactions with third parties that were not prohibited by any law. The government failed to offer substantial evidence that Fletcher engaged in any criminal conspiracy or substantive crime, much less that he made any misrepresentation or caused any misrepresentation to be made.  At best, the government only proved Fletcher engaged in business transactions with the Perez brothers. A judgment of acquittal must be entered.

## III.   Conclusion

This Court should grant judgments of acquittal on Counts One, Eight, Fifteen, and Eighteen because the government failed to introduce substantial

evidence to prove every essential element of those offenses beyond a reasonable doubt.

Respectfully submitted,

**STEVEN H. SADOW, P.C.**

*s/ Steven H. Sadow*
**STEVEN H. SADOW**
Georgia Bar Number 622075
260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303
Telephone: (404) 577-1400
stevesadow@gmail.com
Attorney for Defendant Fletcher

**LAW OFFICES OF
HORWITZ & CITRO, P.A.**

*s/ Vincent A. Citro*
**VINCENT A. CITRO**
Florida Bar Number: 0468657
17 East Pine Street
Orlando, Florida 32801
Telephone: (407) 843-7733
vince@horwitzcitrolaw.com
Attorney for Defendant Fletcher

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 5, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>s/ Vincent A. Citro</u>
**VINCENT A. CITRO**
Florida Bar Number: 0468657